## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **MICHAEL BEATTIE,** | Civ. No. 2:15-cv-0235 (WJM) |
| **Plaintiff,** | |
| **v.** | **OPINION** |
| **CAROLYN W. COLVIN,** **Acting Commissioner of Social Security,** | |
| **Defendant.** | |

**WILLIAM J. MARTINI, U.S.D.J.:**

Plaintiff Michael Beattie brings this action pursuant to 42 U.S.C. § 405(g) seeking review of a final determination by the Commissioner of Social Security (the "Commissioner") denying his Title II application for Disability Insurance Benefits ("DIB") under the Social Security Act ("SSA"). For the reasons that follow, the Commissioner's decision is **AFFIRMED**.

## I.    LEGAL STANDARDS

### A. The Five–Step Sequential Analysis

Under the authority of the Social Security Act, the Social Security Administration has established a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. In the first step, the Commissioner determines whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. *Id.* §§ 404.1520(b), 416.920(b). If not, the Commissioner moves to step two to determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, the Commissioner inquires in step three as to whether the impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A. If so, the claimant is automatically eligible to receive benefits (and the analysis ends); if not, the Commissioner moves on to step four. *Id.* §§ 404.1520(d), 416.920(d). In the fourth step, the Commissioner decides whether, despite any severe impairment, the claimant retains the residual functional capacity ("RFC") to perform past relevant work ("PRW"). *Id.* §§ 404.1520(e)-(f), 416.920(e)-(f).

The claimant bears the burden of proof at each of these first four steps. At step five, the burden shifts to the Social Security Administration to demonstrate that the claimant is capable of performing other jobs that exist in significant numbers in the national economy in light of the claimant's age, education, work experience and RFC. 20 C.F.R. §§ 404 .1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.,* 474 F.3d 88, 91–92 (3d Cir. 2007) (citations omitted).

### B.  Standard of Review

For the purpose of this appeal, the Court conducts a plenary review of the legal issues. *See Schaudeck v. Comm'r of Soc. Sec. Admin.,* 181 F.3d 429, 431 (3d Cir. 1999). The factual findings of the Administrative Law Judge ("ALJ") are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel,* 228 F.3d 259, 262 (3d Cir. 2000). Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart,* 364 F.3d 501, 503 (3d Cir. 2004) (citation omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* When substantial evidence exists to support the ALJ's factual findings, this Court must abide by the ALJ's determinations. *See id.* (citing 42 U.S.C. § 405(g)).

## II.    BACKGROUND

Plaintiff Michael Beattie is a fifty-two-year-old Newark, New Jersey resident who seeks a finding of disability on the basis of the following impairments: (1) Hepatitis C; (2) back, neck, and shoulder disorders; (3) bipolar disorder and other affective disorders; and (4) a history of cocaine and heroin abuse. Administrative Transcript ("Tr.") 20. Plaintiff has a tenth-grade education and previously worked as a contractor and maintenance supervisor. Tr. 57-59, 218-21, 225-26.

In March 2010, Plaintiff filed a Title II application for Disability Insurance Benefits ("DIB"), alleging that he was disabled from May 2007 through September 30, 2010, his date last insured (the "relevant period").[1] Tr. 20, 194-200, 224, 234. After both his initial application and his request for reconsideration were denied, Plaintiff requested a hearing before an ALJ. Tr. 106-12, 116-20. Following a hearing, the ALJ issued a written decision finding that Plaintiff was not disabled. Tr. 17-43. The ALJ found that Plaintiff had impairments that were severe but did not meet or equal the impairments listed in 20 C.F.R. Part 404, Subpart P, and Appendix 1. Tr. 29-32. The ALJ further found that Plaintiff had the residual functional capacity (RFC) to perform light, unskilled work, and that an individual with that RFC could perform a significant number of jobs existed in the national economy. Tr. 32-38. In November 2014, the Appeals Counsel denied Plaintiff's request to review the ALJ's decision. Tr. 1-5. Plaintiff now appeals.

---

[1] Plaintiff later amended his disability onset date to August 2008. Tr. 55.

### A.  The ALJ's Decision

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity during the period from his amended onset date (August 2008) through his date last insured (September 30, 2010).  Tr. 29.  At step two, the ALJ determined that Plaintiff's Hepatitis C; back, neck, and shoulder impairments; affective disorders; and history of heroin and cocaine abuse were severe impairments.  Tr. 29.  At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A.  Tr. 29-32.  The ALJ did note that Plaintiff had moderate difficulties with concentration, persistence or pace.  Tr. at 31.

At step four, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in the Regulations, except he could only perform jobs that were unskilled and repetitive; that required only an occasional change in the work setting during the workday; and that required only occasional contact with supervisors and the general public.  Tr. 32.  In making this determination, the ALJ concluded that Plaintiff's impairments could reasonably be expected to cause the alleged symptoms, but that his statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible.  Tr. 33.  The ALJ further concluded Plaintiff was unable to perform any past relevant work.  Tr. 37.

At step five, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. In making this determination, the ALJ asked the vocational expert at Plaintiff's hearing about a hypothetical individual with Plaintiff's vocational profile and the physical RFC to do a range of light work, and the mental RFC to do simple and unskilled jobs which required only an occasional change in the work setting during the workday and only occasional contact with supervisors and the general public.  Tr. 99.  The VE responded that such a hypothetical individual could not perform any of Plaintiff's past work, but that the individual could perform several unskilled occupations in the national economy, such as a photocopy operator, ticketer, and inspector/hand packager.  Tr. 67.  The

### III.    DISCUSSION

Plaintiff challenges the ALJ's decision, arguing that the ALJ: (1) improperly declined to give controlling weight to the treating psychiatrist's opinion; (2) presented a deficient hypothetical to the vocational expert ("VE"); and (3) inadequately evaluated

Plaintiff's credibility.

### A. The ALJ Properly Weighed the Treating Physician's Opinion

Plaintiff first argues that the ALJ erred in failing to give controlling weight or, at least, greater weight to Plaintiff's treating psychiatrist, Dr. Andrea Nagy-Hallett. The Court disagrees.

An ALJ is free to choose one medical opinion over another so long as the ALJ considers all the evidence and gives some reason for discounting the evidence she rejects. *See Diaz v. Commissioner of Soc. Sec.*, 577 F.3d 500, 505-06 (3d Cir. 2009); *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) ("An ALJ . . . may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided."). A treating source's opinion of the nature and severity of an individual's impairment must only be given controlling weight if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Fargnoli v. Massanari*, 247 F.3d 34, 43 (3d Cir. 2001); Social Security Ruling (SSR) 96-2p. Otherwise, a treating source's medical opinion should be weighed according to the factors defined in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). *See* SSR 96-2p.

The ALJ's decision not to afford Dr. Nagy-Hallett's opinion controlling weight is supported by substantial evidence. In her June 2012 report, Dr. Nagy-Hallett stated that Plaintiff suffered from bipolar disorder and ADHD, and that he was unable to complete a normal workday without interruptions from his psychologically-based symptoms. Tr. 398-402. Dr. Nagy-Hallett estimated that Plaintiff would be absent from work more than 4 days per month due to his impairments or treatment, and estimated that Plaintiff's limitations arose in August 2008. *Id.* But, as the ALJ pointed out, Dr. Nagy-Hallett did not begin treating Plaintiff until January 2011, a few months *after* Plaintiff's last insured date (September 30, 2010). Tr. 35, 398, 421. And Dr. Nagy-Hallett did not indicate that she had reviewed Plaintiff's medical records from the relevant period as a basis for her opinion, nor was she his treating physician during the relevant period. Tr. 398-408. In fact, although Dr. Nagy-Hallett listed in her RFC questionnaire that one of Plaintiff's impairments was ADHD, Tr. 398, Plaintiff's ADHD was not diagnosed until August 2011, almost a year after the relevant period concluded, Tr. 405. This buttresses the ALJ's conclusion that Dr. Nagy-Hallett's report was not a reliable indicator of Plaintiff's functioning during the relevant period. *See e.g., Ochs v. Comm'r of Soc. Sec.*, 187 Fed. App'x 186, 190 (3d Cir. 2006) ("The ALJ [] properly limited the reports of [claimant's] treating orthopedist, because they fell outside the relevant period . . . .");

The ALJ also found that Dr. Nagy-Hallett's report deserved lesser weight under 20 C.F.R. § 404.1527 because it conflicted with other record evidence. Tr. 35. Specifically, the ALJ considered Dr. Paul F. Fulford's consultive mental status evaluation, which was

conducted on September 16, 2010 (during the relevant period).  Tr. 367-68.  Dr. Fulford concluded that Plaintiff generally functioned well; specifically, he stated that Plaintiff "was oriented to time, place, and person," his "[s]peech was clear and goal directed," his "[m]ental control was good," his "[s]hort term auditory recall memory was good."  *Id.* Similarly, Plaintiff's medical records from Mount Carmel Guild during the relevant period showed that Plaintiff generally functioned well when he was compliant with his medications and not using drugs or alcohol.  Tr. 422-443.  For example, in January 2009, March 2009, and September 2009, Mount Carmel records indicated that Plaintiff had racing thoughts; however, he reported each time that he had run out of medications.  Tr. 428-30.  Once he was restarted on all of his medications, in October 2009, Mount Carmel records indicated that Plaintiff reported that he was doing well, with no evidence of mania, depression, or delusions.  Tr. 427.  A January 2010 Mount Carmel progress report indicated that Plaintiff was fully oriented, had an intact memory, had no mood swings, and was moving out of a shelter to a new apartment.  Tr. 426.  Similarly, Mount Carmel progress notes from May 2010 indicated that Plaintiff was "a lot more relaxed" and sleeping better.  *Id.* at 424.

Thus, substantial evidence supports the ALJ's decision to afford lesser weight to Dr. Nagy-Hallett's report: Dr. Nagy-Hallett did not treat Plaintiff during the relevant period, 20 C .F.R § 404.1527(c)(2) ("We will look at the treatment the source has provided"), she did not have evidence from the relevant period to support her opinion, 20 C.F.R. § 404.1527(c)(3), and her opinion was not consistent with evidence from the relevant period, 20 C.F.R. § 404.1527(c)(4) ("the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion").

## B.  The Hypothetical Posed to the VE is Supported by Substantial Evidence

Plaintiff contends that the ALJ's step five determination is not supported by substantial evidence because the hypothetical question posed to the VE failed to adequately incorporate Plaintiff's moderate limitations in concentration, persistence, and pace.  This argument is unpersuasive.

The Third Circuit has stated "in the clearest terms" that an ALJ's hypothetical to a VE "must reflect all of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence."  *Ramirez v. Barnhart*, 372 F.3d 546, 552 (3d Cir. 2004) (quoting *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987)); *see also Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005) (holding that a hypothetical question posed to a vocational expert "must accurately convey to the vocational expert all of a claimant's credibly established limitations.").  Moreover, "great specificity is required when an ALJ incorporates a claimant's mental or physical limitations into a hypothetical."  *Id.* at 554-55 (internal citations omitted).

In this case, the ALJ asked the VE to consider an individual who, *inter alia*, could

5

do work that was "simple and unskilled, jobs that required only an occasional change in work setting during the work day [and] only occasional contact with supervisors and the general public." Tr. 99. Plaintiff argues that this hypothetical question violates the principles set forth in *Ramirez* because the question did not reflect Plaintiff's "moderate limitations in maintaining concentration, persistence, or pace," as determined in the ALJ's step three finding.

But the Third Circuit has consistently held that a hypothetical question limiting a claimant to simple jobs sufficiently encompasses a claimant's moderate concentration limitations. For example, in *McDonald v. Astrue*, the Third Circuit held that, "in line with [the ALJ's] finding that McDonald only had 'moderate limitations with his ability to maintain concentration, persistence and pace,' the ALJ's inclusion in her hypothetical that the individual be limited to 'simple, routine tasks' and that he avoid noise extremes and bright or sudden light changes" adequately reflected McDonald's limitations. *McDonald v. Astrue*, 293 Fed. App'x 941, 946 (3d Cir. 2008). The Court specifically distinguished McDonald's limitations from the plaintiff in *Ramirez*, because in *Ramirez*, "a hypothetical requiring that the individual's work be limited to 'simple one to two step tasks' was inadequate because it did not take into account that the claimant '*often* suffered from deficiencies in concentration, persistence, or pace.'" *Id.* at 947, n. 10 (citing and quoting *Ramirez*, 372 F.3d at 554) (emphasis in original); *see also Najmi-Nejad v. Barnhart*, 75 Fed. App'x 60, 64 (3d Cir. 2003) (question about "simple routine work" encompassed difficulties in "concentration, persistence, or pace"); *Menkes v. Astrue*, 262 Fed. App'x 410, 412-13 (3d Cir. 3008) (same). Here, as in *McDonald*, Plaintiff was deemed to suffer moderate limitations in concentration, persistence, or pace; the hypothetical question including simple jobs sufficiently accounted for this limitation.

Accordingly, the hypothetical question posed to the VE adequately reflected Plaintiff's impairments. As such, the VE's testimony constituted substantial evidence supporting a finding of no disability.

### C. The ALJ's Credibility Determination is Without Error

Finally, Plaintiff challenges the ALJ's credibility finding on the ground that it was inadequately explained, unsupported by the record evidence, and biased. The record belies Plaintiff's claim.

A claimant's statements about his pain or other symptoms will not alone establish that he is disabled. 20 C.F.R. § 404.1529(a). Rather, in evaluating the intensity and persistence of symptoms, the ALJ will consider several factors, including the claimant's medical history, daily activities, and the medications claimant has taken to alleviate symptoms. 20 C.F.R. § 404.1529(c)(1)-(3). And, while a plaintiff's testimony of subjective pain and inability to perform even light work is normally entitled to great weight, an ALJ may reject those claims if he or she explains why they are inconsistent with the medical evidence of record. *See, e.g.*, *Harkins v. Commissioner of Social Security*, 399

6

Fed. App'x 731, 735 (3d Cir. 2010) (citing *Matullo v. Bowen*, 926 F.2d 240, 245 (3d Cir. 1990)).  Moreover, when determining the credibility of a plaintiff's testimony, an ALJ may consider a plaintiff's medical treatment and ability to perform daily tasks.  *See Harkins*, 399 Fed. App'x at 735; *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999).  A reviewing court will "ordinarily defer to an ALJ's credibility determination because he or she has the opportunity at a hearing to assess a witness's demeanor."  *Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003).

Contrary to Plaintiff's claim that the ALJ "cherry picked" the record in making her credibility finding, the ALJ provided several well-supported reasons for her determination. Here, the ALJ found that "the medical evidence, the claimant's activities of daily living, along with the claimant's presentation at the hearing, support a conclusion that the claimant is not as functionally limited as [he] alleges."  Tr. 33.  Specifically, the ALJ noted that, while Plaintiff reported that he experienced depression and anxiety from January 2009 – September 2009, medical records from that period showed that he was out of medication, which would explain his symptoms. Tr. 34; *see also* 20 C.F.R. § 404.1529(c)(3) (directing the ALJ to consider the medication a claimant is using to treat his symptoms in conjunction with the claimant's statements).  Moreover, the ALJ stated that the medical evidence (such as the Mount Carmel Guild progress reports) from 2009 and 2010 showed that Plaintiff was "described as fully oriented," "doing well," and had moved out of a shelter and into a new apartment.  *Id*.  Similarly, the ALJ pointed out that, although Plaintiff testified at his September 2012 hearing before the ALJ that he could not work because he "couldn't think right" and was "very forgetful," Dr. Fulford had reported in September 2010 that Plaintiff had good mental control and short-term memory.  Tr. 35, 367.

The ALJ also pointed out that, in Plaintiff's April 2010 Function Report, Plaintiff had reported an ability to perform daily hygiene rituals, prepare meals on a daily basis, clean his apartment and do laundry once a week, go outside daily, shop in stores twice a month for food and household supplies, pay bills and handle money, and converse daily with others.  He also reported that he had no problems getting along with others and is able to follow written instructions very well.  However, at his September 2012 hearing, Plaintiff reported a reduction in his activities of daily living.  The ALJ explained that "this was after [Plaintiff] had been denied benefits by the Administration on the initial and reconsideration levels" and was therefore "motivated to decrease the extent of his activities during his testimony."  Tr. at 36.  The ALJ further stated that, "[d]espite his current claims of functional decline, the medical evidence shows no significant objective change in his medical condition to warrant such a change in functioning."  *Id*.  Accordingly, substantial evidence supports the ALJ's assessment of Plaintiff's credibility.  *See, e.g.*, *Harkins*, 399 Fed. App'x at 735; *see also Reefer*, 326 F.3d at 380.

Plaintiff's bias claim is also meritless.  Plaintiff argues that the ALJ was biased against him because she noted that Plaintiff had an incentive to decrease the extent of his activities at his hearing in order to be eligible for benefits.  But Plaintiff has provided no

evidence to support his bias claim, and the Court is unpersuaded by Plaintiff's conclusory allegation of the ALJ's "speculative and prejudicial preconception that all claimants are motivated to lie when their cases proceed beyond the reconsideration level."  Reply at 13; *see, e.g., Vail v. Colvin*, No. 13-966, 2014 WL 2615708, at *8 (D.N.J. June 12, 2014) (The ALJ "determined that Plaintiff's claims of reduced daily activities were not credible because the medical evidence showed no change in Plaintiff's medical condition [and] Plaintiff has not persuaded this Court that what appears to be an ordinary credibility determination" is in any way biased or prejudiced.).

## IV.    CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED**.  An appropriate order follows.


/s/ William J. Martini
                         **WILLIAM J. MARTINI, U.S.D.J.**

**Date:  January 28, 2016**